```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              - - -

UNITED STATES OF AMERICA    :  CRIMINAL ACTION NO. 11-573
                            :
          v.                :  Philadelphia, Pennsylvania
                            :  April 27, 2012
ANDY DURIS,                 :  9:41 o'clock a.m.
          Defendant         :
. . . . . . . . . . . . . . :

                   CHANGE OF PLEA HEARING
            BEFORE THE HONORABLE TIMOTHY R. RICE
                UNITED STATES MAGISTRATE JUDGE

                              - - -

APPEARANCES:

For the Government:     FAITH M. TAYLOR, ESQUIRE
                        Assistant U.S. Attorney
                        615 Chestnut Street
                        Suite 1250
                        Philadelphia, PA 19106

For the Defendant:      STEPHEN D. MOLINEUX, ESQUIRE
                        225 McDade Boulevard
                        Collingdale, PA  19023

Also Present:           Chuck Meiser
                        Pre-trial Services

                              - - -

Audio Operator/ESR:     Kristin Makely

Transcribed by:         Paula L. Curran, CET

        (Proceeding recorded by The Record Player digital
sound recording; transcript produced by AAERT-certified
transcriber.)




                   Laws Transcription Service
                     48 W. LaCrosse Avenue
                      Lansdowne, PA 19050
                         (610)623-4178
```

1    (The following occurred in open court at 9:41
2    o'clock a.m.)
3            THE DEPUTY CLERK: All rise.
4            THE COURT: Have a seat, everybody.
5            ALL: Good morning, your Honor.
6            THE COURT: And you are not Ms. Lunkenheimer.
7            MS. TAYLOR: I am not.
8            THE COURT: Ms. Taylor?
9            MS. TAYLOR: Yes, your Honor.
10           THE COURT: Thank you for coming over to help us
11   out.
12           MS. TAYLOR: Sure.
13           THE COURT: Appreciate it. All right, Mr. Duris,
14   how are you?
15           THE DEFENDANT: Good, your Honor, thank you.
16           THE COURT: Our court reporter is Kristin Makely, so
17   we're lucky to have her. We're here to do a guilty plea with
18   Mr. Duris, is that correct?
19           MR. MOLINEUX: That is correct, your Honor.
20           THE COURT: All right, Mr. Duris, before we start, I
21   wanted to just note that you have a right to have your case
22   heard by a United States District Court Judge. I'm a
23   Magistrate Judge and you've consented to have me handle the
24   case, is that correct?
25           THE DEFENDANT: Yes.

1  THE COURT: Okay, you don't have to do that if you
2  don't want to, but that's certainly your choice. But I
3  wanted to make sure that you voluntarily are doing that?
4  THE DEFENDANT: Yes.
5  THE COURT: All right, thank you. You can be
6  seated, sir, I don't want to keep you standing. All right,
7  I'm going to ask you some questions, sir, just to determine
8  whether you're knowingly and voluntarily entering the plea.
9  So just listen carefully and I'll go through a list of
10 serious questions, which I'm sure most of them, you've gone
11 over with your lawyer.
12  Ms. Makely, could you swear Mr. Duris, please.
13 Could you please stand and be sworn, sir.
14  ANDY DURIS, Defendant, Sworn.
15  THE COURT: All right, thank you, sir. Sir, do you
16 understand that you are now under oath and if you answer any
17 question falsely, your answer could later be used against you
18 in prosecution for perjury or making a false statement?
19  THE DEFENDANT: Yes.
20  THE COURT: All right, if I say anything you don't
21 understand or you want to interrupt me or ask me to explain
22 anything, just let me know, I'll be happy to do that. Also,
23 if you want to talk to Mr. Molineux at any time, you can talk
24 with him privately, just say you need a minute to talk to him
25 and I'll be happy to take a break while you do that.

1  THE DEFENDANT: Thank you.
2  THE COURT: Am I pronouncing your name right?
3  MR. MOLINEUX: Molineux, sir.
4  THE COURT: Molineux, sorry.
5  MR. MOLINEUX: Okay.
6  THE COURT: It's the Irish pronunciation.
7  MR. MOLINEUX: Yes, exactly, it happens every day,
8  so no big deal.
9  THE COURT: All right, I apologize. I thought of it
10 after I said it twice and I was like, maybe that's not the
11 right way.
12      Mr. Duris, could you state your full name, please?
13 THE DEFENDANT: Andrew Stanley Duris, Jr.
14 THE COURT: All right and how old are you, sir?
15 THE DEFENDANT: 55.
16 THE COURT: Same age as me. Can you read, write and
17 converse in English?
18 THE DEFENDANT: Yes.
19 THE COURT: All right and how far did you go in
20 school?
21 THE DEFENDANT: I got to college, but did not
22 graduate.
23 THE COURT: Okay. Have you ever had or been treated
24 for drug or alcohol addiction or mental illness?
25 THE DEFENDANT: Yes.

1      THE COURT: Okay, tell me about that.
2      THE DEFENDANT: I did a 30-day extensive out-patient
3  therapy at Milmont Rehabilitation Center.
4      THE COURT: When was that?
5      THE DEFENDANT: In November.
6      THE COURT: Okay, so that's after the charges in
7  this case?
8      THE DEFENDANT: Yes.
9      THE COURT: Okay, have you had any drugs or alcohol
10 today or yesterday?
11     THE DEFENDANT: No.
12     THE COURT: Do you have any difficulty understanding
13 what's going on here today?
14     THE DEFENDANT: No.
15     THE COURT: You understand who I am, who Mr.
16 Molineux is?
17     THE DEFENDANT: Yes.
18     THE COURT: Who the prosecutor is?
19     THE DEFENDANT: Mm-hmm.
20     THE COURT: Okay. Chuck, I notice you're here, so
21 I'll ask you while you're here, has there been any negative
22 drug tests?
23     MR. MEISER: No, wait, all positive.
24     THE COURT: No positive?
25     MR. MEISER: Positive drug tests, sorry.

1    THE COURT: No negative results, I guess.
2    MR. MEISER: No negative results.
3    THE COURT: Excellent.
4    MR. MEISER: Mr. Duris provided about, I think about
5 14 or 15 urine specimens since this situation began and
6 they've all been negative.
7    THE COURT: Okay, good. So it sounds like the rehab
8 program helped?
9    THE DEFENDANT: Yes.
10   THE COURT: Excellent. Do you have any difficulty
11 hearing or understanding me?
12   THE DEFENDANT: No.
13   THE COURT: All right, has Mr. Molineux gone over
14 the charges against you and fully explained your trial rights
15 and defenses you could bring to those charges?
16   THE DEFENDANT: Yes.
17   THE COURT: Now, I'm going to ask that you show Mr.
18 Duris the plea agreement. Who has that, Mr. Molineux?
19   MR. MOLINEUX: Mr. Duris, I'm showing you the guilty
20 plea agreement. You've had an opportunity to review this
21 document?
22   THE DEFENDANT: Yes.
23   THE COURT: And is that your signature on the last
24 page of the document?
25   THE DEFENDANT: Yes.

1  MR. MOLINEUX: And by signing it, you're telling the
2  Court that not only did you read it, but that you understood
3  it and I answered all your questions about it?
4  THE DEFENDANT: That's correct.
5  THE COURT: Very articulate, thank you for doing
6  that. There's also an advisement of rights form attached to
7  that, did you also sign that?
8  THE DEFENDANT: Yes.
9  THE COURT: And did Mr. Molineux go over all those
10  rights with you?
11  THE DEFENDANT: Yes.
12  THE COURT: All right, very good and did he fully
13  explain the plea agreement to you, any questions you had?
14  THE DEFENDANT: Yes.
15  THE COURT: Did you feel you had enough time to talk
16  it over with your lawyer?
17  THE DEFENDANT: Yes.
18  THE COURT: And so far, has Mr. Molineux done
19  everything in this case that you asked him to do?
20  THE DEFENDANT: Yes, he has.
21  THE COURT: All right. Ms. Taylor, would you please
22  summarize the terms of the plea agreement?
23  MS. TAYLOR: Yes, your Honor. In paragraph one of
24  this plea agreement, Mr. Duris is agreeing to plead guilty to
25  Count 1 of the information, which charges him with attempted

1  possession of Oxycodone, arising from his attempt to
2  illegally purchase prescription medication from an employee
3  at the Boeing Company's Ridley Park, Pennsylvania facility.
4      Paragraph two indicates that the Government will
5  make whatever sentencing recommendation it deems appropriate
6  and comment on the evidence and circumstances in the case.
7      In paragraph three, Mr. Duris indicates that he
8  understands the statutory maximum for this one count, which
9  is a maximum of one year in prison, one year of supervised
10 release, a $1,000 fine and a $100 special assessment.
11     Paragraph four indicates some financial obligations
12 that Mr. Duris is agreeing to.
13     Paragraph five indicates he will pay that $100
14 Special Victims Witness Assessment fee before the time of
15 sentencing.
16     Paragraph six indicates that Mr. Duris may not
17 withdraw his plea because this Court declines to follow any
18 recommendation, motion or stipulation by the parties.
19     There are a few stipulations which are outlined in
20 paragraph seven. Namely that Mr. Duris attempted to possess
21 two Oxycontin 80 milligram tablets, each of which is a
22 mixture and substance containing a detectable amount of
23 Oxycodone. And that the parties have agreed, based on his
24 acceptance of responsibility, that he's eligible for a
25 two-level downward adjustment.

1    In paragraph eight, Mr. Duris is waiving all of his
2 rights to appeal or collaterally attack the conviction of
3 sentence. Of course, if the Government appeals, then Mr.
4 Duris would maintain the right to appeal. If not, Mr. Duris
5 appeal rights are limited, very limited to only three areas.
6 If this Court exceeds the statutory maximum in sentencing or
7 erroneously departs upward or imposing an unreasonable
8 sentence pursuant to United States v. Booker.
9    In paragraph nine, Mr. Duris is waiving any claim
10 under the Hyde amendment.
11    In paragraph ten, he's waiving any claim under the
12 Freedom of Information Act.
13    In paragraph 11, he's indicating that he's satisfied
14 with his attorney and in paragraph 12, it indicates that this
15 is the complete agreement. That there are no additional
16 agreements, promises or understandings other than those set
17 forth in the written plea agreement.
18    THE COURT: Now, the big question is, which state
19 south of the Mason Dixon Line are you from?
20    MS. TAYLOR: North Carolina.
21    THE COURT: North Carolina. I was trying to figure
22 out, Georgia, South Carolina?
23    MS. TAYLOR: Most people guess Alabama.
24    THE COURT: There's a little Alabama in there. All
25 right, Mr. Molineux, are those all of the terms of the plea

```
1   agreement?
2           MR. MOLINEUX:  Yes, they are, your Honor.
3           THE COURT:  All right and Mr. Duris, do you agree
4   with your attorney that those are all the promises that were
5   made in this case?
6           THE DEFENDANT:  Yes, I do, your Honor.
7           THE COURT:  All right.  Other than those terms, did
8   anyone else promise you or offer you anything to plead guilty
9   in this case?
10          THE DEFENDANT:  No.
11          THE COURT:  All right, do you understand that no one
12  can guarantee you what sentence I will impose?
13          THE DEFENDANT:  Yes.
14          THE COURT:  Did anyone use force, violence or
15  threats to get you to plead guilty?
16          THE DEFENDANT:  No.
17          THE COURT:  Are you pleading guilty because of your
18  own free will?
19          THE DEFENDANT:  Yes.
20          THE COURT:  Did anyone tell you what to say today or
21  put words in your mouth?
22          THE DEFENDANT:  No.
23          THE COURT:  All right, do you understand that you're
24  entering a plea to a misdemeanor and you'll be adjudged
25  guilty of a misdemeanor which may deprive you of some civil
```

1 rights?

2 THE DEFENDANT: Yes.

3 THE COURT: All right, for example, if you're not a
4 United States citizen, you could be deported.

5 THE DEFENDANT: Okay.

6 THE COURT: All right, now the maximum, the
7 prosecutor has outlined the maximum penalties that could be
8 imposed, do you understand those?

9 THE DEFENDANT: Yes.

10 THE COURT: All right and do you understand that
11 this offense is covered by what we call the sentencing
12 guidelines and that I'm required to consider those guidelines
13 in sentencing, but may depart either upward or downward?

14 THE DEFENDANT: Yes.

15 THE COURT: All right, I'm going to have a probation
16 officer prepare a pre-sentence report, which will set forth
17 your sentencing guideline ratings. If you disagree with the
18 report, your guilty plea is still binding, but you can
19 contest the report with the officer and contest it in court,
20 before me, at sentencing.

21 THE DEFENDANT: Okay.

22 THE COURT: Now, the Government can also contest the
23 report. For example, if they believe the report has errors,
24 they can argue that the report should increase your
25 guidelines or could increase your sentencing exposure.

1  THE DEFENDANT: Okay.
2  THE COURT: All right. Do you understand that your
3  attorney and the Government attorney can agree on facts and
4  make recommendations, motions or requests at sentencing, but
5  that I do not have to do what they ask me to do?
6  THE DEFENDANT: Yes.
7  THE COURT: Nevertheless, your plea would still be
8  binding whether or not I agree with the facts or
9  recommendations of your lawyer and the Government lawyer or
10 grant or deny their motions or requests?
11 THE DEFENDANT: Yes.
12 THE COURT: Do you understand that there's no more
13 parole and you will be required to serve the entire of
14 imprisonment you are sentenced to, if you are sentenced to
15 imprisonment?
16 THE DEFENDANT: Yes.
17 THE COURT: Do you understand that as part of your
18 plea agreement, you've given up a significant right to appeal
19 or attack your guilty plea. For example, you would normally
20 have the right to bring proceedings such as an appeal or a
21 collateral attack and a habeas corpus motion to vacate, set
22 aside or correct your sentence and you're giving up that
23 right.
24 THE DEFENDANT: Yes.
25 THE COURT: All right, the plea agreement greatly

1  limits your right to appeal and prevents you from using later
2  proceedings like a collateral attack or habeas corpus
3  petition to challenge your conviction, sentence or other
4  matter and you will only be permitted to appeal under the
5  conditions the Government outlined in paragraph eight?
6              THE DEFENDANT: Yes.
7              THE COURT: All right. Now, you have some other
8  constitutional rights which I'm going to explain to you, many
9  of which were in the acknowledgement of rights form that you
10 signed.
11             Do you understand, sir, that you are presumed
12 innocent until you are proven guilty by the Government beyond
13 a reasonable doubt?
14             THE DEFENDANT: Yes.
15             THE COURT: Do you understand that you have a right
16 to the assistance of a lawyer at every stage of the
17 proceeding, including before trial, during trial, after trial
18 and for any appeals to higher courts and if you cannot afford
19 a lawyer, one will be appointed for you free of charge?
20             THE DEFENDANT: Yes.
21             THE COURT: Do you understand that you have a right
22 to plead not guilty and persist in that plea and have your
23 case tried either by a jury or 12 people or by me, sitting
24 alone?
25             THE DEFENDANT: Yes.

1  THE COURT: Do you understand that you have a right
2  to a jury of your peers drawn from the residents of this
3  district and you would get help in selecting members of that
4  jury?
5  THE DEFENDANT: Yes.
6  THE COURT: Do you also understand that in order to
7  find you guilty, a jury would have to be unanimous, that is,
8  all 12 jurors would have to agree that the Government has
9  proven your guilt beyond a reasonable doubt?
10 THE DEFENDANT: Yes.
11 THE COURT: Do you understand that you could obtain
12 a subpoena or court order to make witnesses come to court on
13 your behalf?
14 THE DEFENDANT: Yes.
15 THE COURT: Do you understand that if you are found
16 guilty, you could appeal such a finding of guilt to a higher
17 court, which could set aside, modify the finding of guilt or
18 give you a new trial?
19 THE DEFENDANT: Yes.
20 THE COURT: Do you understand that, at a trial, you
21 would have the right to confront and cross-examine, that is,
22 to be in the courtroom face-to-face and see and challenge the
23 Government's witnesses against you?
24 THE DEFENDANT: Yes.
25 THE COURT: Do you understand that at a trial, you

1  don't have to testify and you can't be forced to take the
2  witness stand, if you don't want to and no one could force
3  you to take the witness stand?
4              THE DEFENDANT: Yes.
5              THE COURT: And the U.S. Attorney, Ms. Taylor, could
6  not comment on the fact that you did not testify during your
7  trial?
8              THE DEFENDANT: Yes.
9              THE COURT: Do you understand that by entering this
10 guilty plea, there will be no trial and you're giving up all
11 the rights I just told you about, in admitting that you are
12 guilty of the crimes charged?
13             THE DEFENDANT: Yes.
14             THE COURT: In order to prove you guilty, the
15 Government would have to prove two elements beyond a
16 reasonable doubt and those elements are that you intended to
17 commit the crime of illegally possessing a controlled
18 substance. In this case, a mixture or substance containing a
19 detectable amount of Oxycodone and that thereafter, you did
20 an act constituting a substantial step toward the commission
21 of that crime, which strongly corroborated your criminal
22 intent.
23             THE DEFENDANT: Yes.
24             THE COURT: All right. And Ms. Taylor, would you
25 summarize the facts that the Government would introduce into

```
 1  evidence.  Now, I want you to listen to the prosecutor, Mr.
 2  Duris, because she's going to outline what evidence they
 3  would offer at the trial and I'm going to ask you whether
 4  that's accurate and whether you did the things they claim
 5  they can prove you did, okay.  Go ahead, Ms. Taylor.
 6            MS. TAYLOR:  Thank you, your Honor.  If this case
 7  were to proceed to trial, the Government would introduce
 8  evidence through witness and documentary exhibits, which
 9  would establish that on September 23, 2011, the defendant met
10  with an individual who was cooperating with the Government
11  inside a building on the Boeing Company's Ridley Park,
12  Pennsylvania campus.  There, the defendant bought to placebo
13  Oxycontin 80 milligram tablets from the Government's
14  cooperator for $80.
15            THE COURT:  Okay, is that accurate, sir?
16            THE DEFENDANT:  That's correct, yeah.
17            THE COURT:  Did you do all the things she said you
18  did?
19            THE DEFENDANT:  Yes.
20            THE COURT:  All right.  Now, I want to ask you,
21  also, there maybe collateral consequences to your guilty plea
22  and I don't know if you've thought about this.  But there's a
23  possibility that by pleading guilty, that could affect your
24  ability to get your job back at Boeing.
25            THE DEFENDANT:  That's correct, your Honor.
```

1   THE COURT: You know that?
2   THE DEFENDANT: Yes.
3   THE COURT: So there is a chance that if you plead
4   guilty, that may prevent you from going back to Boeing.
5   Okay, I just want to make sure you understand that's a
6   possibility. I don't know if it is or it isn't, but it's
7   certainly an option that exists.
8   THE DEFENDANT: I understand, your Honor.
9   THE COURT: Okay, all right. Now, do you wish to
10  change your plea from not guilty to guilty, sir?
11  THE DEFENDANT: Yes.
12  THE COURT: All right. Ms. Settles, do you want to
13  take Mr. Duris' plea?
14  THE DEPUTY CLERK: Andy Duris, you've been charged
15  in the Information Number 11-573 in violation of 21, USC,
16  846, attempted possession of Oxycodone. How do you plead,
17  guilty or not guilty?
18  THE DEFENDANT: Guilty.
19  THE COURT: All right, thank you, sir, you can be
20  seated. All right, based on the answers you gave me, Mr.
21  Duris, I'm going to make the following findings. I'm going
22  to find that you are fully alert and competent and capable of
23  entering an informed plea. That this plea is a knowing and
24  voluntary plea supported by an independent basis in fact,
25  containing each of the essential elements of the offenses

1  pled to and that your guilty plea is therefore accepted and
2  you're adjudged guilty of the offense charged in the
3  information.
4      Anything else we have to do on a plea base?
5      MS. TAYLOR: I don't believe so, your Honor.
6      THE COURT: Mr. Molineux?
7      MR. MOLINEUX: I do not think so, sir.
8      THE COURT: All right. Chuck, in terms of release
9  conditions, we're going to continue those?
10     MR. MEISER: That's our recommendation, your Honor.
11     THE COURT: All right. Ms. Taylor, are you okay
12 with that?
13     MS. TAYLOR: Yes, your Honor.
14     THE COURT: All right, so, sir, you're going to be
15 released today on the same conditions, so I urge you to
16 continue to comply with any requests from pre-trial services
17 until your sentencing.
18     I was going to schedule sentencing and I want to
19 make sure this date works for everyone involved, but, I don't
20 want to mess up anyone's vacation plans. July 10th?
21     MR. MOLINEUX: Your Honor, can I inquire as to what
22 day that is, sir?
23     THE COURT: That's a Tuesday, I think.
24     MR. MOLINEUX: I have court commitments on all
25 Mondays in Delaware County, but Tuesday, that would work for

1 me, sir.

2 THE COURT: Okay.

3 THE DEFENDANT: Tuesday is okay, your Honor.

4 THE COURT: Tuesday, July 10th, Ms. Taylor?

5 MS. TAYLOR: That's fine, your Honor.

6 THE COURT: All right, we'll do it at 10:00 a.m., so
7 I'll have a pre-sentence report. There will be -- somebody
8 from the probation office will contact you or Mr. Molineux
9 and ask you some questions about your background and they'll
10 prepare a report, which will help give me a better picture of
11 your life and you as a person, to assist me with the
12 sentencing.

13 THE DEFENDANT: Okay.

14 THE COURT: Okay?

15 THE DEFENDANT: Mm-hmm.

16 THE COURT: Anything else we have to do today?

17 MS. TAYLOR: I don't believe so, your Honor.

18 THE COURT: All right, thank you for coming in and
19 I'm sorry I kept you waiting for those few minutes.

20 MR. MOLINEUX: That's okay.

21 THE COURT: I appreciate it.

22 (Proceeding adjourned 9:58 o'clock a.m.)

23 * * *

CERTIFICATION

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


s:/Geraldine C. Laws, CET        Dated 9/19/12
Laws Transcription Service